IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 3:17CR23-1–HEH |
| CLARENCE SCRANAGE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
(Denying Defendant's Motion for a New Trial)

The Defendant, Clarence Scranage, Jr. ("Scranage"), a physician, was convicted on August 10, 2017, by a jury in the United States District Court of conspiracy to distribute and dispense oxycodone, and eighteen additional counts of distribution, and aiding and abetting in the distribution and dispensing of oxycodone. The government called a total of twenty witnesses, including ten co-conspirators, who vividly laid out the modus operandi of the conspiracy, along with a number of federal and state law enforcement officers who participated in the investigation. The evidence revealed that over a four-year period of time, Scranage falsely issued 1,257 prescriptions, for a total of 223,140 30 mg pills, which were illicitly distributed to drug users.

The evidence at trial demonstrated that Scranage utilized two primary conduits for distribution of oxycodone to street level dealers. These were Andrell Hill ("Hill") and Anthony Harper ("Harper"). Both Harper and Hill entered pleas of guilty and testified as government witnesses at Scranage's trial. Nine additional witnesses testified that they received prescriptions written by Scranage from Hill and Harper. The witnesses testified

that the prescriptions for oxycodone were filled at pharmacies, sold on the street, and the proceeds returned to Hill and Harper. The individuals receiving the prescriptions testified that they never had contact with Scranage, nor were they one of his patients.

Scranage's case is presently before the Court on his Motion for New Trial ("Motion", ECF No. 197) pursuant to Fed. R. Crim. P. 33, based upon newly-discovered evidence.[1] The genesis of this Motion is his contention that Harper has recanted his testimony and that Scranage is actually innocent of the conspiracy. His claim is based on an affidavit filed by Raymond Johnson ("Johnson"), an inmate who was once confined in the same area of the Northern Neck Regional Jail as Harper. In his affidavit, Johnson contends that Harper revealed to him that he testified falsely during the trial in order to gain a substantial sentence reduction. (Def.'s Motion New Trial, Ex. 2, ECF No. 197-2.) The government has filed a response in opposition, as well as a supplemental response with supporting exhibits. Scranage has not filed a reply.

Shortly after Scranage's Motion was filed, FBI Special Agent James R. Conner, III, one of the principal investigators in this case, interviewed Harper. While Harper acknowledged being housed at the Northern Neck Regional Jail with an individual named "Ray," he denied having any discussion with him concerning Scranage's case. (Gov't's

---

[1] Scranage's initial pleading also included a Motion for an Indicative Ruling on the Motion for Relief that is barred by a pending appeal, pursuant to Fed. R. Crim. P. 37(A)(3) (ECF No. 198). However, on November 9, 2018, the United States Court of Appeals for the Fourth Circuit affirmed Scranage's convictions for conspiracy to distribute and dispense oxycodone, and multiple counts of distribution of oxycodone (ECF No. 204). Therefore, his Motion under Fed. R. Crim. P. 37(A)(3) is moot.

2

Suppl. Resp. Opp'n, Ex. 1, ECF No. 210-1.)[2] Special Agent Conner allowed Harper to review the affidavit signed by Johnson. Harper reiterated that his testimony during the trial was truthful and that Scranage was fully aware of his role in the conspiracy to distribute oxycodone. "Harper recall[ed] watching Scranage write out multiple prescriptions to various individuals not present at the time, and not patients of Scranage's practice." (*Id.*)

Special Agent Conner subsequently interviewed Johnson.[3] Johnson revealed to the agent that he was importuned by Scranage to execute the affidavit falsely stating that Harper had recanted his testimony. (Gov't's Suppl. Resp. Opp'n, Ex. 2, ECF No. 210-2.) The purpose of the affidavit, according to Scranage, was "to win" a new trial. (*Id.*) Scranage assured Harper that "nothing would happen" to him for signing the affidavit. (*Id.*) Johnson conceded to the agent that he had not discussed Scranage's case with Harper and that his contentions of the contrary in the affidavit were "absolutely false in their entirety." (*Id.*) He informed the agent that Scranage "coached" him in drafting the affidavit and edited the drafts. (*Id.*) Johnson also admitted to the agent that Scranage offered him assistance after his release from prison, ostensibly to elicit his cooperation.[4] (*Id.*)

---

[2] Harper identified a photo of Raymond Johnson as the person referred to as "Ray" during Special Agent Conner's interview. (Gov't's Suppl. Resp. Opp'n, Ex. 1.)

[3] In his investigation reports, attached as exhibits to the Government's Supplemental Response in Opposition, Special Agent Conner notes that Johnson prefers to be called "Kera" and he uses that name throughout the reports. Here, the Court will continue to use the name "Johnson."

[4] In his final interview with Special Agent Conner, Johnson revealed that "a mysterious money order for $200" was placed in his jail account shortly before the affidavit was presented to him for signature. (Gov't's Suppl. Resp. Opp'n, Ex. 3, ECF No. 210-3.)

3

The United States Court of Appeals for the Fourth Circuit has counseled trial courts to set a high bar in reviewing motions for a new trial based on a witness's recantation of trial testimony, particularly when it is the result of coercion. *United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973). Recantations of prior testimony are "looked upon with the utmost suspicion." *Wolfe v. Johnson*, 565 F.3d 140, 166 (4th Cir. 2009) (citing *United States v. Johnson*, 487 F.2d at 1279).

Even without the testimony of Harper, the evidence introduced by the government was more than sufficient to demonstrate Scranage's guilt beyond a reasonable doubt as to each count in the Indictment. Harper was one of the earliest co-conspirators to plead guilty and concede his complicity in the distribution scheme. Moreover, the majority of Harper's testimony was corroborated by other witnesses. Therefore, this Court is not convinced that Harper's trial testimony was false.

This Court must weigh Scranage's representations in connection with this Motion in the context of his prior history of misrepresentations and deception. In the immediate case, Scranage received an enhancement in his U.S. Sentencing Guidelines based upon his introduction of altered documents during his trial in this case. FBI Special Agent Jean Wyatt, the principal investigator in this case, testified in rebuttal that medical records introduced into evidence by Scranage had been significantly altered. In fact, Scranage, who chose to represent himself despite the Court's advice to the contrary, declined to cross-examine Agent Wyatt. This Court is also aware that Scranage was previously convicted by this Court in 2004 of making false statements to law enforcement and obstruction of justice.

After a thorough review of the record in this case, this Court finds no basis under Fed. R. Crim. P. 33 to grant a new trial based on newly-discovered evidence—because there is none.

Accordingly, Scranage's Motion for a New Trial will be denied.[5] An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 6, 2019
Richmond, Virginia

---

[5] At the time this Motion was filed, Scranage was represented by counsel on his appeal to the Fourth Circuit of his conviction in this case. However, shortly after the government filed its response in opposition to this Motion, and after the Fourth Circuit issued its Order affirming Scranage's conviction, counsel withdrew with leave of court. (ECF No. 207.)

5