IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )  Criminal No. 3:17-cr-23-HEH-1 |
| | ) |
| CLARENCE SCRANAGE, JR., | ) |
| | ) |
| Petitioner. | ) |

**MEMORANDUM OPINION**
(Denying 28 U.S.C § 2255 Motions)

Petitioner Clarence Scranage, Jr. ("Petitioner" or "Scranage"), a federal inmate proceeding with counsel, filed these 28 U.S.C. § 2255 Motions (ECF Nos. 232, 260). For the reasons that follow, the § 2255 Motions will be denied.

### I. Preliminary Summary of Factual and Procedural History

Following a jury trial, where he represented himself, Petitioner was convicted of

conspiracy to distribute and dispense oxycodone, and eighteen additional counts of distribution, and aiding and abetting in the distribution and dispensing of oxycodone. The government called a total of twenty witnesses, including ten co-conspirators, who vividly laid out the modus operandi of the conspiracy, along with a number of federal and state law enforcement officers who participated in the investigation. The evidence revealed that over a four-year period of time, Scranage falsely issued 1,257 prescriptions, for a total of 223,140 30 mg pills, which were illicitly distributed to drug users.

The evidence at trial demonstrated that Scranage utilized two primary conduits for distribution of oxycodone to street level dealers. These were Andrell Hill ("Hill") and Anthony Harper ("Harper"). Both Harper and Hill entered pleas of guilty and testified as government witnesses at Scranage's trial. Nine additional witnesses testified that they received prescriptions written by Scranage from Hill and Harper. The witnesses testified that the prescriptions for oxycodone were filled at pharmacies, sold on the street, and

> the proceeds returned to Hill and Harper. The individuals receiving the prescriptions testified that they never had contact with Scranage, nor were they one of his patients.

*United States v. Scranage*, No. 3:17-cr-23–HEH-1, 2019 WL 1063373, at *1 (E.D. Va. Mar. 6, 2019).[1] The Court sentenced Petitioner to 360 months of imprisonment. (J. at 2, ECF No. 169.)

> On appeal, Petitioner asserted
>
> that he did not knowingly, intelligently, and voluntarily waive his Sixth Amendment right to the assistance of counsel before proceeding to represent himself in his criminal proceedings. He claims that the district court's consideration of a plan requiring him to sell some of his assets to reimburse court-appointed counsel compelled him to proceed pro se to avoid financial hardship.

*United States v. Scranage*, 742 F. App'x 745, 746 (4th Cir. 2018). The United States Court of Appeals for the Fourth Circuit rejected that claim:

> Here, we find that the district court did not err in granting Scranage's request to waive counsel and represent himself. An examination of the record demonstrates that Scranage's election to proceed pro se was clear, knowing, intelligent, and voluntary. The magistrate judge's colloquy was detailed and complete, and Scranage, a medical doctor, stated under oath that he fully understood his choice. Moreover, court-appointed counsel was designated as standby counsel for the duration of the proceedings to assist Scranage when needed for procedural matters, at no cost to Scranage. The court repeatedly reminded Scranage that standby counsel was available to assist him. Further, the record is devoid of any indication that the court's consideration of a plan to require Scranage to sell a few identifiable assets to reimburse court-appointed counsel amounted to financial duress compelling Scranage to proceed pro se.

*Id.* at 746–47.

---

[1] The above summary comes from the Court's denial of Petitioner's motion for a new trial.

2

In his initial 28 U.S.C. § 2255 Motion (the "Motion," ECF No. 232), filed *pro se*, Petitioner raised the following grounds for relief:[2]

| | |
|---|---|
| Claim One | Court-appointed counsel performed defectively when she failed to dissuade Petitioner from representing himself. (Mot. at 14.) |
| Claims Two & Five | The Magistrate Judge abused his discretion in granting Petitioner's request to represent himself. (*Id.* at 15, 17–18.) |
| Claim Three | Given Petitioner's mental and emotional condition, the Court abused its discretion in letting Petitioner continue to represent himself at trial. (*Id.* at 15–16.) |
| Claim Four | Appellate counsel should have alerted the United States Court of Appeals for the Fourth Circuit of the restrictions on Petitioner's ability to use the law library "to indicate the impropriety of allowing Petitioner to represent himself." (*Id.* at 16–17.) |
| Claim Six | Petitioner was denied the effective assistance of appellate counsel because:<br>(a) appellate counsel failed to file a reply brief, (*id.* at 18);<br>(b) appellate counsel did not raise as a basis for relief, Petitioner's objections to Jury Instructions 6 and 10, (*id.*); and,<br>(c) appellate counsel did not raise as a basis for relief, the Court's denial of Petitioner's motions (ECF Nos. 157, 159, 160–163), (*id.* at 19). |

On April 11, 2023, Petitioner, by counsel, filed an Amended 28 U.S.C. § 2255 Motion (the "Amended Motion," ECF No. 260) wherein he asserted that he was entitled to relief in light of the decision in *Ruan v. United States*, 597 U.S. 450 (2022). Specifically, Petitioner asserts:

---

[2] The Court employs the pagination assigned by CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions.

| | |
|---|---|
| Claim Seven | "In *Ruan*, the Supreme Court held that the state of mind required for the government to sustain a conviction under § 841 concerns whether a doctor knew he or she was acting in 'an unauthorized manner.' In doing so, the Court implicitly required that a subjective good faith instruction be given to the jury. The *Ruan* Court thus shifted the burden of proof from a 'hypothetical "reasonable" doctor' to the actual subjective belief of the defendant himself. The jury in Dr. Scranage's trial was instructed in the same manner the Supreme Court rejected in *Ruan*. The instructions in Dr. Scranage's trial advocated for the objective standard of any reasonable physician, rather than Dr. Scranage's own subjective belief." (Am. Mot. at 8.) |

As explained below, Claims Two, Three, Five, and Seven are barred from review by this Court and the remaining claims lack merit.

## II. Claims Barred From Review

Defendants are not "allowed to recast, under the guise of collateral attack, questions fully considered" on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). In addition, the doctrine of procedural default prevents petitioners from bringing claims on habeas review that they could have raised on direct review, but did not. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("The background for our discussion is the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") (citations omitted). Because Petitioner either did raise, or could have raised, Claims Two, Three, Five, and Seven, they are barred from review here. The Court will address Petitioner's attempt to show cause and prejudice to excuse his default of Claim Seven below. Petitioner offers no viable argument to permit review of Claims Two, Three, and Five and, therefore, these claims will be dismissed.

4

## III. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Pre-Trial Counsel

In Claim One, Petitioner contends that pretrial counsel performed deficiently because "she failed to counsel and insist that it would be foolhardy and virtually suicidal for him to want to represent himself. . . ." (Mot. at 14.) The Court fully explained to Petitioner the difficulties and dangers posed by self-representation. (Apr. 6, 2017 Tr. at 4, 8–15, ECF No. 191.) The Court further informed Petitioner:

> I think it is quite unwise of you to represent yourself. You're not familiar with the law, you're not familiar with the court procedure, you're not familiar with the rules of evidence, and it would be my strong advice to you not to

5

> represent yourself, although you have that right. I just want to make sure that you understand the pitfalls.
>
> That is particularly true in [light of] the severity of the punishment that you're facing here. You're facing, if convicted, a long period of time.
>
> The best analogy I've thought of to say to you here today is . . . . [l]et's say that if somebody came in front of you with a heart condition, would you tell them to operate on themselves? I think the answer would be no. . . .

(*Id.* at 13–14.) Given the warnings and admonitions of the Court, Petitioner fails to demonstrate that counsel performed deficiently by failing to further advise him of the dangers of representing himself or that he was prejudiced. *Cf. United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (finding no prejudice when "any misinformation [the petitioner] may have received from his attorney was corrected by the trial court at the Rule 11 hearing"); *Good v. United States*, No. 2:16-cr-22, 2018 WL 2976984, at *5 (E.D. Va. June 12, 2018) (rejecting the petitioner's argument that he suffered prejudice from his counsel's misinformation about his potential sentence because the plea agreement and the plea hearing "fully informed" the petitioner about those penalties). Accordingly, Claim One will be dismissed.

### B. Appellate Counsel

In Claim Four, Petitioner states that he did not enjoy unlimited access to the law library at the University of Richmond. Petitioner faults appellate counsel for failing to "bring this issue to the attention of the Fourth Circuit Court of Appeals to indicate the impropriety of allowing Scranage to represent himself." (Mot. at 17.) Petitioner fails to demonstrate that appellate counsel was constitutionally deficient for not including this fact in his brief. Furthermore, Petitioner does not demonstrate any reasonable probability

6

that the Fourth Circuit would have altered its ruling had appellate counsel presented this information. Accordingly, Claim Four will be dismissed.

In Claim Six (a), Petitioner faults appellate counsel for not filing a reply brief. Petitioner does not demonstrate that the failure to file a reply brief is constitutionally deficient or that he suffered any prejudice from that omission. Accordingly, Claim Six (a) will be dismissed.

In Claim Six (b), Petitioner complains that appellate counsel did not appeal the Court's provision of Instruction 6, dealing with impeachment. (*See* Proposed Jury Instrs. at 10, ECF No. 88.) In Claim Six (c), Petitioner complains that appellate counsel did not appeal the Court's provision of Instruction 10, dealing with false exculpatory statements. (*See id.* at 15.) "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). Counsel has no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of

7

counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Petitioner fails to demonstrate that the provision of the challenged jury instructions was improper, much less that any challenge was clearly stronger than the issues counsel raised on appeal. Accordingly, Claim Six (b) will be dismissed because Petitioner fails to demonstrate deficiency or prejudice.

Similarly, in Claim Six (c), Petitioner faults appellate counsel for not challenging the Court's denial of his: Motion for Reconsideration of Acquittal Judgment (ECF No. 157); Motion for Mistrial (ECF No. 159); Motion to Strike and Set Aside Conviction (ECF No. 160); Motion for Medical Downward Departure (ECF No. 161); Motion to Continue Sentencing and Replacement of Stand-by Counsel (ECF No. 162); and Motion to Return Flash Drive and Objection to Search (ECF No. 163). Once again, Petitioner fails to demonstrate that the Court's denial of these motions was in error, much less that this issue was a fertile ground for appeal. Accordingly, the Court will dismiss Claim Six (c) because Petitioner fails to demonstrate deficiency or prejudice.

### IV. Petitioner's Request for Relief Under *Ruan*

#### A. Legal and Factual Background

"Federal law prohibits the knowing or intentional distribution of a controlled substance '[e]xcept as authorized.'" *United States v. Kim*, 71 F.4th 155, 159 (4th Cir. 2023) (quoting 21 U.S.C. § 841(a)) (alteration in original), *cert. denied*, No. 23-5846, 2023 WL 8007580 (U.S. Nov. 20, 2023). In *Ruan v. United States*, 597 U.S. 450 (2022), the Supreme Court addressed the mens rea element of § 841 in the context of a medical doctor who was charged with dispensing a controlled substance in violation of 21 U.S.C.

8

§ 841 and asserted that the "as authorized" exception applied to him. *Id.* at 454–55. The Supreme Court "held that the statutory knowing-or-intentional *mens rea* applies not only to the distribution-related elements of the crime, but also to the question of authorization." *Kim*, 71 F.4th at 159. Therefore, "if a defendant charged under § 841 'produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant [subjectively] knew that he or she was acting in an unauthorized manner, or intended to do so.'" *Id.* at 159–60 (quoting *Ruan*, 597 U.S. at 454);[3] *United States v. Duldulao*, 87 F.4th 1239, 1251 (11th Cir. 2023) (observing that *Ruan* "requires the government to prove that 'the defendant knowingly or intentionally acted in an unauthorized manner'—that the defendant knew he was acting outside the usual course of professional practice or intended to" (quoting *Ruan*, 597 U.S. at 468)).

Petitioner contends that the relevant jury instruction "advocated for the objective standard of any reasonable physician, rather than [his] own subjective belief." (Am. Mot. at 8.) Specifically, the instruction stated:

> A doctor's good faith in treating patients is relevant to your determination of whether the doctor acted beyond the bounds of a legitimate medical practice. A doctor should not be held criminally liable if the doctor acted in good faith when treating the doctor's patients. But under this good-faith standard, a doctor must be seeking to comply with an objective standard. A doctor is not free deliberately to disregard prevailing standards of treatment. To fall within the good-faith standard, the doctor must have acted in accordance with what the doctor reasonably believed to be proper medical practice.

---

[3] "Before *Ruan* was decided, [the Fourth Circuit] (and others) had held that whether a doctor's actions were authorized was an objective inquiry." *Kim*, 71 F.4th at 160 (citing *United States v. Hurwitz*, 459 F.3d 463, 479 (4th Cir. 2006)).

9

(Aug. 10, 2017 Tr. at 64, ECF No. 180.)

The Government correctly notes that, because Petitioner failed to challenge the above instruction at trial and on appeal, his claim is procedurally defaulted. (Resp. in Opp'n to Am. Mot. at 1, ECF No. 264.) "Two showings excuse a procedural default: a defendant's demonstration of 'either cause and actual prejudice or that he is actually innocent.'" *United States v. McKinney*, 60 F.4th 188, 193 (4th Cir. 2023) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Petitioner contends that he can demonstrate cause and prejudice to excuse his default. (Reply at 4, ECF No. 267.) "To establish prejudice, a defendant must show that the error 'worked to his *actual* and substantial disadvantage.'" *McKinney*, 60 F.4th 188 at 195 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). Petitioner has not and cannot demonstrate that he was prejudiced. As explained briefly below, there was overwhelming evidence presented at trial that demonstrated Petitioner subjectively knew "he was issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose." *Kim*, 71 F.4th at 166; *see id.* at 159 ("A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice . . . .") (quoting 21 C.F.R. § 1306.04(a)).

Dr. Kennedy testified as to the general standard of care with respect to prescribing opioids and other addictive drugs. (Aug. 9, 2017 Tr. at 62, ECF No. 192.) Specifically, he testified that the doctor should obtain a history of the medical complaint, conduct a physical exam that at least pertains to the complaint, obtain lab studies, utilize urine drug

10

screens to ensure "there's nothing in there that shouldn't be, and that the medication that is supposed to be in there is in there," and, "the physician should try to find alternatives and should try to treat with a minimum possible dosage." (*Id.* at 62–63.) Dr. Kennedy also emphasized the importance for the physician to have complete documentation in charts for each patient, including diagnostic information, lab reports, and urine and drug screens. (*Id.* at 65–66.) Neither at trial, nor now, does Petitioner demonstrate that Dr. Kennedy's description regarding the standard of care was extreme or unrealistic. Nevertheless, the evidence overwhelmingly demonstrated that Petitioner knowingly prescribed medications for his own profit, not in accordance with the accepted standard of care or for the legitimate medical treatment of the recipients of the prescriptions.

For example, with respect to James Bloomfield, Petitioner ordered 14 prescriptions for far in excess of 2,000 pills and his chart lacked almost all medically appropriate information. (*Id.* at 68–71.) There was no documentation of an initial medical exam, a diagnosis, a treatment plan, urine screens, etc. According to Dr. Kennedy, there was no evidence that Bloomfield and Petitioner were ever in the same room. (*Id.* at 72.) Indeed, Mr. Bloomfield later testified and confirmed that he had never been to see Petitioner. (Aug. 7, 2017 Tr. at 186, ECF No. 187.)

Petitioner's charts for many of his other patients were remarkably similar. For example, Petitioner prescribed Chante Crawley "1,260, 30-milligram, oxycodone pills based on no medical records and no studies and no physical exam and any indication they had even met . . . ." (Aug. 9, 2017 Tr. at 72–74.) Dr. Kennedy opined that such actions

11

were not consistent with practicing medicine, but rather with operating as a drug dealer. (*Id.* at 74.) Other evidence confirmed his opinion.

Barbara Bloomfield testified that her daughter, Chantelle Jordan, approached her and asked if she could use her name and her husband's name to have prescriptions filled in exchange for money. (Aug. 7, 2017 Tr. at 163–67.) Mrs. Bloomfield agreed and Petitioner began writing prescriptions in her name. (*Id.* at 167.) Petitioner's medical file for Ms. Bloomfield indicated that she had a car accident and broken hip. (*Id.* at 168.) Ms. Bloomfield denied being involved in a car accident or having a broken hip and stated that she had not provided that information to anyone and that someone had fabricated her medical file. (*Id.* at 168–70.) In court, Ms. Bloomfield testified that she had never seen Petitioner before and he certainly was not her doctor or her husband's doctor. (*Id.* at 163–64.)

On May 5, 2016, before executing a search warrant at Petitioner's office, Special Agent James Connor had a long conversation with Petitioner. During that conversation, Petitioner acknowledged that, as a prerequisite to prescribing a Schedule II substance there needed to be a doctor-patient relationship and the doctor needed to personally examine the patient. (*Id.* at 148–49.) Petitioner further assured Agent Connor that he had never written a prescription for a patient that he had not examined. (*Id.* at 149.) Petitioner explained that he charged $400 in cash for the first visit for a pain patient and $200 in cash for all subsequent visits and that he did not accept insurance. (*Id.* at 151.) When Agent Connor presented Petitioner with the file of Barbara Bloomfield, Petitioner lied and insisted that he had examined her. (*Id.* at 157.)

Anthony Harper testified that, after he received one prescription from Petitioner for oxycodone, he approached Petitioner with the idea of selling the prescriptions for money. (*Id.* at 223.) Petitioner agreed they "could make a lot of money selling" the prescriptions. (*Id.*) Harper then paid Petitioner $500 to write a prescription for 240 oxycodone pills. (*Id.*) Harper recruited other individuals to obtain prescriptions from Petitioner. (*Id.* at 224.) In some instances, when Harper needed a "stack of prescriptions," he would simply go to Petitioner's office with "a list of names, and [Petitioner] wrote [Harper] a prescription for those people." (*Id.* at 230.)[4] Harper then paid Petitioner $5,000 in cash for the stack of ten (10) prescriptions. (*Id.* at 241.) After Petitioner learned that Andrell Hill had been arrested, Petitioner told Harper that all of the pill-fillers would have to come in and personally see him. (*Id.* at 242.)

Given this record, there is simply no possibility that a different jury instruction that required the Government to prove beyond a reasonable doubt that Petitioner subjectively knew that he was acting in an unauthorized manner, or intended to do so, would have altered the conclusion of the trial. *See Kim*, 71 F.4th at 159–60 (quoting *Ruan*, 597 U.S. at 454). This result could not be changed by some different trial strategy, some additional impeachment of the government's witnesses, or any testimony from Petitioner. *See id.* at 166 (observing that "the mountain of circumstantial evidence leaves little doubt" defendant "was issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose"); *see United States v. Heaton*, 59 F.4th

---

[4] Harper indicated that he handed Petitioner a stack of ten (10) to twenty (20) prescriptions about once a month. (Aug. 7, 2017 Tr. at 247–48.)

1226, 1242 (11th Cir. 2023) (concluding *Ruan* error was harmless). Because Petitioner fails to demonstrate that he suffered actual prejudice, Claim Seven will be dismissed.[5]

### V. Conclusion

Petitioner's Motion to Extend 28 U.S.C. § 2255 Filing Deadline (ECF No. 233) will be denied as unnecessary. Petitioner's claims will be dismissed. Petitioner's 28 U.S.C. § 2255 Motions (ECF Nos. 232, 260) will be denied. The Court will deny a certificate of appealability.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: January 16, 2024
Richmond, Virginia

---

[5] Petitioner insists that, when considered with his claims of ineffective assistance of counsel, he has demonstrated prejudice. (Reply at 9–10.) Petitioner's attempt to demonstrate cumulative prejudice fails, as none of counsel's actions were constitutionally deficient. *See Fisher v. Angelone*, 163 F.3d 835, 853 (4th Cir. 1998) ("[A]n attorney's acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996))).